UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC COAST HORSESHOEING SCHOOL, INC.; BOB SMITH; and ESTEBAN NAREZ,<br><br>        Plaintiffs,<br><br>    v.<br><br>DEAN GRAFILO, et al.,<br>        Defendants. | No. 2:17-cv-02217-JAM-GGH<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

    Pacific Coast Horseshoeing School (the "School") and its owner, Bob Smith ("Smith"), seek to enroll a potential student, Esteban Narez ("Narez"). Under California's Private Postsecondary Education Act of 2009 (the "Act"), CAL. EDUC. CODE §§ 94800 et seq., the School may not enroll students unless they meet ability-to-benefit requirements. Because Narez did not meet those requirements, the Act required the School to deny his application. Plaintiffs elected to legally challenge the Act by filing a Complaint in this Court which alleges that the Act abridges the School's and Smith's First Amendment right to teach horseshoeing and Narez's First Amendment right to learn horseshoeing.

1

Defendants have moved to dismiss. Mot., ECF No. 15. Plaintiffs oppose dismissal. Opp'n, ECF No. 18. For reasons explained below, the Court grants Defendants' motion.[1]

**I.   BACKGROUND**

A. <u>The Private Postsecondary Education Act of 2009</u>

In the Act, the California legislature expressed concern about the value of degrees issued by private postsecondary schools and the lack of protection for the schools' students and consumers of their services. CAL. EDUC. CODE § 94801(b). In promulgating the Act, the legislature sought to ensure:

> (1) Minimum educational quality standards and opportunities for success for California students attending private postsecondary schools in California.
>
> (2) Meaningful student protections through essential avenues of recourse for students.
>
> (3) A regulatory structure that provides for an appropriate level of oversight.
>
> (4) A regulatory governance structure that ensures that all stakeholders have a voice and are heard in policymaking by the bureau.
>
> (5) A regulatory governance structure that provides for accountability and oversight by the Legislature through program monitoring and periodic reports.
>
> (6) Prevention of the harm to students and the deception of the public that results from fraudulent or substandard educational programs and degrees.

CAL. EDUC. CODE § 94801(d).

The Bureau for Private Postsecondary Education (the

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for February 27, 2018. In deciding this motion, the Court takes as true all well-pleaded facts in the complaint.

2

"Bureau") regulates private postsecondary educational institutions. CAL. EDUC. CODE § 94875. The Bureau approves regulated institutions that meet minimum operating standards. CAL. EDUC. CODE § 94887. Defendant Michael Marion serves as Chief of the Bureau, which is located within California's Department of Consumer Affairs. Compl., ECF No. 1, p. 2 ¶ 11. Defendant Dean Grafilo is the appointed Director of California's Department of Consumer Affairs. Id. ¶ 12.

Before a regulated institution can execute an enrollment agreement with a student who did not graduate high school or pass an equivalency examination, such as the General Educational Development (GED) test, that student must pass "an independently administered examination from the list of examinations prescribed by the United States Department of Education" or a Bureau-approved examination relevant to the intended occupational training. CAL. EDUC. CODE §§ 94811, 94904(a–b); 5 CAL. CODE REGS. § 71770(a)(1).

B. Pacific Coast Horseshoeing School, Smith, and Narez

Horseshoeing is the practice of shaping metal to be fitted and nailed into a horse's hoof. Compl. at 2 ¶ 16. A person who shoes horses is called a farrier. Id. ¶ 17. In California, farriering does not require a license. Id. ¶ 21.

Smith founded the School in 1991. Id. at 3 ¶¶ 26–27. Five times each year, the School offers a full-time eight-week curriculum to about 12 to 14 students. Id. ¶¶ 28, 32. That curriculum includes classroom session and practice removing, shaping, and applying horseshoes to horses. Id. ¶ 28. Classroom sessions focus on horseshoeing theory; horse anatomy, movement,

3

and lameness; and business advice on client management, self-employment, and interaction with barns, trainers, and veterinarians. Id. ¶ 30. The School evaluates students by written or oral examinations. Id. ¶ 31. As of this year, the School's tuition costs $6,000. Id. ¶ 33.

The School qualifies as a regulated institution under the Act because it (1) is a private entity located in California that (2) offers a curriculum to the public for a vocational purpose and (3) charges tuition. Id. at 4 ¶¶ 34-36; see also CAL. EDUC. CODE §§ 94857, 94858. The Act thus requires the School only enroll students who have high school diplomas or recognized equivalents, or have passed ability-to-benefit examinations. CAL. EDUC. CODE § 94904.

Plaintiffs assert that earning a passing score on an ability-to-benefit examination is unnecessary for horseshoeing. Compl. at 5 ¶ 46. The School, which previously did not impose educational prerequisites to admission, does not accept state or federal student loans. Id. at 6 ¶¶ 52-53. Smith does not charge students who are unable to benefit from the School's curriculum because he refunds all but $250 of tuition paid if continuing the course is not in the student's best interest after the first week. Id. ¶ 54.

The School was first inspected by the Bureau in 2016. Id. ¶ 55. The Bureau determined that the School's admissions requirements did not comply with the Act because it lacked admission prerequisites. Id. ¶ 56. Smith inquired whether the Bureau would recognize his practice of partially refunding tuition after the first week to non-benefiting students as an

4

alternative to having students pass an ability-to-benefit examination. Id. at 6-7 ¶ 57. The Bureau did not accept Smith's proposal as an alternative to the Act's requirements. Id. Accordingly, in 2017, Smith modified the School's admissions standards to call for a high school diploma, its equivalent, or passage of an ability-to-benefit examination, as required for Bureau approval. Id. at 7 ¶¶ 58-59. Because of this change, the School has since rejected otherwise qualified students who did not meet these academic qualifications. Id. ¶ 60.

One such student turned away due to admissions standards changes is Plaintiff Esteban Narez. Narez dropped out of high school and has not subsequently earned his high school diploma or GED. Compl. at 7-8 ¶¶ 63-64, 75. Jobs in the equine field sparked Narez's passion for horses. Id. ¶¶ 67-68. After working alongside a farrier, Narez sought to become a farrier himself. Id. at 8 ¶¶ 70-73. Narez believes studying for and taking the GED or an ability-to-benefit examination would conflict with his work schedule and would not substantially advance his career. Id. at 8-9 ¶¶ 78-79. Although the School wanted to admit Narez, it rejected his application because he did not meet the Act's ability-to-benefit requirements for enrollment at a private postsecondary educational institution. Id. ¶¶ 76-77, 81.

Plaintiffs' Complaint seeks a judicial declaration that the ability-to-benefit requirement is unconstitutional and injunctive relief to this effect. Prayer for Relief ¶¶ A, C.

///

///

///

**II. OPINION**

Plaintiffs argue that California's ability-to-benefit requirement as applied violates their First Amendment rights by restricting Smith and the School from teaching their horseshoeing curriculum and preventing the enrollment of Narez, who has not proven his ability to benefit under the Act. Compl. at 9-11 ¶¶ 89-101. Defendants move to dismiss because they assert the Act regulates non-expressive conduct and survives rational basis review. Mot. at 3-7. Alternatively, Defendants argue that the Act is content-neutral and satisfies the test set forth in United States v. O'Brien, 391 U.S. 367, 377 (1968). Id. at 8-11.

Plaintiffs counter that the Court should not resolve First Amendment claims at the motion to dismiss stage. Opp'n at 10. Nevertheless, where a court accepts all of the plaintiffs' allegations as true and construes all facts in their favor, the Ninth Circuit has not found early resolution of First Amendment claims to be problematic. See, e.g., San Francisco Apartment Ass'n v. City & Cty. of San Francisco, 881 F.3d 1169 (9th Cir. 2018) (affirming grant of judgment on the pleadings to government on First Amendment claim); Taub v. City & Cty. of San Francisco, 696 F. App'x 181, 184 (9th Cir. 2017) (affirming dismissal of the plaintiffs' First Amendment claim on a 12(b)(6) motion).

A. The Extent to Which Speech Is Implicated

"The First Amendment applies to state laws and regulations through the Due Process Clause of the Fourteenth Amendment." Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of

Psychology, 228 F.3d 1043, 1053 (9th Cir. 2000) ("NAAP"). Under the Fourteenth Amendment, "a statute is required to bear only a rational relationship to a legitimate state interest, unless it makes a suspect classification or implicates a fundamental right." Id. at 1049. Because horseshoeing schools, their purveyors, and aspiring farriers are not members of suspect classes entitled to heightened scrutiny, the Court must examine whether the ability-to-benefit requirement implicates the fundamental right of free speech.

The Court must first determine whether the Act regulates speech or conduct. Pickup v. Brown, 740 F.3d 1208, 1225 (9th Cir. 2014). The Supreme Court instructs that "restrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct." Sorrell v. IMS Health Inc., 564 U.S. 552, 567 (2011). In the case of the latter, "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." Id.

Defendants provide several sources of binding authority in support of their argument that the ability-to-benefit requirement regulates conduct, not speech. See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc., 547 U.S. 47, 62 (2006) ("FAIR") (holding that a law compelling publicly funded law schools to offer the military equivalent access to campus as other employers regulated conduct); Pickup, 740 F.3d at 1229 (holding that a law prohibiting mental health providers from providing sexual orientation change efforts therapy to minors regulated conduct). In FAIR, the Supreme Court found that the

7

Solomon Amendment regulated "conduct, not speech" because "[i]t affects what law schools must do—afford equal access to military recruiters—not what they may or may not say." 547 U.S. at 60. Similarly, in Pickup, the Ninth Circuit concluded that a state law that allowed licensed therapists to discuss the pros and cons of sexual reorientation therapy with their patients, but prohibited that therapy as a treatment for minors, regulated conduct. 740 F.3d at 1229.

Plaintiffs counter that this issue is controlled by the Supreme Court's decision in Holder v. Humanitarian Law Project, 561 U.S. 1 (2010). In Holder, the Supreme Court held that a law, which prohibited the provision of "material support or resources" to certain foreign organizations that engage in terrorist activity, regulated speech and required a more demanding standard of First Amendment review. Id. at 28. Although the law was directed at conduct, "the conduct triggering coverage under the statute consist[ed] of communicating a message," meaning the law regulated speech. Id.

Plaintiffs argue that the regulation here is triggered by the fact that their speech is vocational in content, rendering the Act a content-based speech restriction. Opp'n at 5. But the text of the Act belies this interpretation. As mentioned above, the Act's requirements apply to schools that qualify under California Education Code Sections 94857 and 94858. The mere fact that a school teaches vocational skills is insufficient to bring an institution under the Act's umbrella unless the school is also private, operating in California, and charging tuition. See id. Further, the ability-to-benefit

8

requirement is not triggered by vocational teaching, but rather by executing an enrollment agreement. CAL. EDUC. CODE § 94904(a).

Additionally, as the Ninth Circuit noted in Pickup, the law at issue in Holder was extremely broad: it completely barred all "communicat[ion of] information about international law and advocacy to a designated terrorist organization." 740 F.3d at 1230. The reach of the ability-to-benefit requirement is not nearly as far-reaching.

Much like Pickup, the Act does not restrain Smith and the School from "imparting information," "disseminating opinions," or "communicating a message." 740 F.3d at 1230. While Plaintiffs argue their speech is being restricted, the only thing that the School cannot do is execute an enrollment agreement with a student who has not demonstrated an ability to benefit under the Act. CAL. EDUC. CODE § 94904(a). That ability may be shown by passing an examination prescribed by the United States Department of Education, id. at § 94904(a), or by passing a Bureau-approved examination that is relevant to the intended occupational training, id. at § 94904(b).[2]

Nothing in the Act prohibits Smith and the School from sharing information and communicating about horseshoeing generally. Nothing prohibits Narez from learning about horseshoeing outside of enrollment at a private postsecondary

---

[2] Accepting all allegations in the Complaint as true, the School has not availed itself of the option to propose a different examination, under subsection (b), that would be more relevant to its course material. Similarly, Narez has not attempted to take any ability-to-benefit examination, much less alleged that he lacks the competence to pass such an examination.

9

educational institution prior to passing an ability-to-benefit examination.

As Defendants highlight, under Plaintiffs' conception of speech, nearly every regulation of postsecondary education would require First Amendment scrutiny because teaching involves speech. Reply, ECF No. 19, p. 2. Regulations on economic activity, such as private education, will always be speech-adjacent because commerce relies on the communication of ideas. Courts have not held, however, that these incidental burdens on speech caused by the regulation of commerce infringe on fundamental rights under the First Amendment. Sorrell, 564 U.S. 552, 566-67 (2011).

### B. Rational Basis Review

If a law regulates non-expressive conduct, rather than speech, the law "must be upheld if it bears a rational relationship to a legitimate state interest." Pickup, 740 F.3d at 1231. The government's action need not "actually advance its stated purposes," so long as "the government could have had a legitimate reason for acting as it did." Nat'l Ass'n for Advancement of Psychoanalysis v. California Bd. of Psychology, 228 F.3d 1043, 1050-51 (9th Cir. 2000) (quoting Dittman v. California, 191 F.3d 1020, 1031 (9th Cir. 1999)). The Court "need only determine whether the [law] has a 'conceivable basis' on which it might survive rational basis scrutiny." Id.

Educational institutions have a right to academic freedom under the First Amendment. Regents of Univ. of California v. Bakke, 438 U.S. 265, 312 (1978). Yet that academic freedom does not mean that an educational institution may use the First

Amendment to shield itself from government regulation and oversight rationally related to a valid government purpose. See Illinois Bible Colleges Ass'n v. Anderson, 870 F.3d 631, 642 (7th Cir. 2017), as amended (Oct. 5, 2017), cert. denied sub nom. Illinois Bible Colleges Ass'n v. Cross, No. 17-960, 2018 WL 325305 (U.S. Feb. 20, 2018) (holding that the state did not infringe on the schools' "right to free speech by regulating degree-issuing post-secondary education"); Nova Univ. v. Educ. Inst. Licensure Comm'n, 483 A.2d 1172, 1181 (D.C. 1984) ("Schools are not shielded by the First Amendment from governmental regulation of business conduct deemed detrimental to the public merely because they are engaged in First Amendment activities.")

The Act's legislative findings detail that "[n]umerous reports and studies have concluded that California's previous attempts at regulatory oversight of private postsecondary schools under the Department of Consumer Affairs ha[d] consistently failed to ensure student protections or provide effective oversight of private postsecondary schools." CAL. EDUC. CODE § 94801(c). In adding additional operational requirements for private postsecondary educational institutions, the Act aimed to ensure that these schools would have "[m]inimum educational quality standards and opportunities for success" and an "appropriate level of oversight." CAL. EDUC. CODE § 94801(d)(1,3). The Act further sought to ensure the "[p]revention of the harm to students and the deception of the public that results from fraudulent or substandard educational programs and degrees." CAL. EDUC. CODE § 94801(d)(6).

California has a legitimate state interest in preventing private postsecondary schools operating in the state from harming students and deceiving the public. That desire to prevent harm and deception is rationally related to the requirement that students at private postsecondary educational institutions show sufficient competency to benefit from that education. See CAL. EDUC. CODE §§ 94904, 94811. It is plausible that the legislature thought requiring students to prove their ability to benefit through examinations or diplomas would improve the students' opportunities for success at postsecondary institutions, and that is enough to sustain the Act. See Romero-Ochoa v. Holder, 712 F.3d 1328, 1331 (9th Cir. 2013).

While Plaintiffs believe that speech-adjacent paternalism "has no place in the American legal landscape," Opp'n at 1, precedent does not support using the courts as a tool to substitute Plaintiffs' preferences for those of the state's elected representatives. Cf. Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464 (1981) ("States are not required to convince the courts of the correctness of their legislative judgments."); Ferguson v. Skrupa, 372 U.S. 726, 729 (1963) ("[I]t is up to legislatures, not courts, to decide on the wisdom and utility of legislation."). The Fourteenth Amendment does not give courts the authority to invalidate a state regulation every time an individual finds it to be unnecessary or inconvenient.

Therefore, the Court finds that the Act and its ability-to-benefit requirement are rationally related to the legitimate

government interest of protecting students and the public from harm and deception.

### C. Leave to Amend

The Court need not grant leave to amend where amendment would be futile. Deveraturda v. Globe Aviation Sec. Servs., 454 F.3d 1043, 1049 (9th Cir. 2006). As explained above, Plaintiffs' Complaint does not state a claim as a matter of law. Plaintiffs have pointed to no facts suggesting amendment could rectify this issue, making dismissal with prejudice appropriate.

### III. ORDER

For the reasons above, the Court GRANTS Defendants' motion to dismiss with prejudice.

IT IS SO ORDERED.

Dated: April 11, 2018

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE